505 P.2d 1057

**STATE of Arizona, Appellee,**

**v.**

**Orlando De La CRUZ, Appellant.**

**No. I CA–CR 471.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 1, 1973.

Gary K. Nelson, Atty. Gen. by Peter M. Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Roger H. Lichty, Deputy Public Defender, Phoenix, for appellant.

EUBANK, Judge.

Defendant Orlando De La Cruz appeals from a judgment of conviction and sentence to the Arizona State Prison for illegal possession of marijuana for sale. Prior to the trial defendant presented a motion to the court to require the State to disclose the identity of the informant or, in the alternative, to dismiss the action. Following a hearing, the motion was denied. Defendant waived a jury trial and following the trial to the court he was found guilty of the charge of possession of marijuana for sale.[1]

Defendant's sole contention on appeal is that the trial court erred in refusing to require the State to disclose the name of the confidential informant whose information led to the issuance of the search warrant and the subsequent discovery of incriminating evidence which resulted in the defendant's conviction.

The facts are as follows: At approximately 10:00 P.M. on the evening of July 2, 1971, Officer Ken Taylor of the Department of Public Safety began a surveillance of defendant's home. Except for a two hour interruption, the surveillance continued until 9:30 A.M. the following morning. At that time a search warrant was obtained and Officer Taylor and four other officers entered the defendant's home. The house was searched and nearly three kilos (in excess of 2000 grams) of marijuana were discovered. Two kilos were found in a laundry sack in the closet of one bedroom and the remainder was in plain view on the floor of a second bedroom and on a living room table.

Officer Taylor testified that when he entered the house he found defendant "lounging" on a mattress in the second bedroom. On the floor in the center of that room was found a brown paper sack which contained four "baggies" of marijuana. Four additional baggies, some loose marijuana,[2] an orange "kilo wrapper", and a box of unused plastic bags, were laid out on a newspaper on the floor in close proximity to the defendant. He further testified that he found two persons in the room with defendant and two additional persons asleep in the other bedroom.

During the surveillance a confidential informant, under the direction of the officers, had entered the house and made a purchase of narcotics. Officer Taylor testified on cross-examination that several persons approached, entered and/or left the house during the surveillance period. However, he was not required by the trial court to reveal the exact time that the informant entered the house or whether any of the persons previously indicated was the informant. He did testify that the informant's description of the seller "deviated some from the defendant's description". The officer testified further:

"... [T]his particular informant has had his life threatened three times. Once with a gun; has been severely beaten once. Not because anyone knew there was information being given, but a threat in case this particular informant ever decided to give information.

I can't stress strongly enough how important it is to protect this individual."

Defendant maintained at trial that he had been absent from the house the entire evening previous to the search; that he had returned home at about 7:30 A.M. that morning and had immediately gone to sleep in the other bedroom; that he had awakened with the arrival of the officers and

---

1. A.R.S. §§ 36–1002.06, 13–138, 13–139, 13–140.

2. A qualified chemist testified that each "baggie" contained approximately an ounce of substance, and that the loose substance constituted roughly nine ounces. An average "kilo" weighs 24 ounces or 700 grams.

had been forced into the second bedroom where the marijuana was found in plain view on the floor by the officers. In this regard Officer Taylor did testify that a person, who could have been defendant, arrived at the house at approximately 7:30 A. M. and remained in the house until the arrest.

Defendant contends on appeal that the trial court should have ordered disclosure of the informant's identity since:

> "Clearly, the confidential informant could have been able to prove that the Defendant was absent during the night before the raid and that the Defendant was in fact asleep in the northwest bedroom prior to the morning raid."

■ The government's privilege to refuse to disclose the name of a confidential informant, which is designed to aid and protect the public interest in effective law enforcement, while broad, is not without limit. The U. S. Supreme Court states:

> " . . . Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."

> *  *  *  *  *  *

> "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." (Roviaro v. United States, 353 U.S. 53, 60–62, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644–645 (1957)).

In the instant case we must weigh the following circumstances to determine whether the nondisclosure of the infor-

mant's identity was erroneous: the validity of the search warrant based on informant's tip is unchallenged; there were at least four other persons in the house at the time the arrests were made, so the informant did not constitute the "sole material witness"; the informant was not in the house at the time of the arrest and could not therefore give evidence on defendant's location at that time; there was already in the record some corroboration for defendant's story that he was absent from the house the evening before the raid; the evidence of the prior sale to the informant was not a part of the State's case; and finally, there was testimony to support the conclusion that there existed a very real danger to informant's well-being should his identity be revealed.

■■ Our Arizona Supreme Court has held that the burden is on the defendant to prove that the informant would be a material witness on the merits of the case. State ex rel. Berger v. Superior Court, 106 Ariz. 470, 478 P.2d 94 (1970). *See also* State v. Martinez, 15 Ariz.App. 430, 489 P.2d 277 (1971); State v. Castro, 13 Ariz. App. 240, 475 P.2d 725 (1970). Such burden was not carried in this case. It is our opinion that the defendant has failed to demonstrate a reasonable possibility that the confidential informant could have given material evidence on the issue of defendant's guilt or innocence of the charge of possession of marijuana for sale. It follows that no error was committed by the trial court's refusal to disclose the informant's identity.

Judgment affirmed.

JACOBSON, C. J., Division 1, and HAIRE, J., concur.