NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ARIES AZRON HOWELL BARNES, *Appellant.*

No. 1 CA-CR 23-0412
FILED 06-04-2024

---

Appeal from the Superior Court in Apache County
Nos. S0100CR202200284
S0100CR202300022
The Honorable Michael D. Latham, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Hamblin Law Office, PLC, Eagar
By Bryce M. Hamblin
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

**¶1**         Aries Azron Howell Barnes appeals the superior court's order revoking his probation after the court found he violated a condition of probation.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         We view the evidence in the light most favorable to affirming the superior court's finding of a probation violation.  *State v. Tatlow*, 231 Ariz. 34, 39–40, ¶ 15 (App. 2012).

**¶3**         In February 2023, Barnes pled guilty to credit card theft, and the superior court placed him on probation for three years (CR 2022-00284, "first case").  That same day, he also pled guilty to third-degree burglary of the local middle school, and the court placed him on a concurrent term of probation for four years (CR 2023-00022, "second case").  In each case, Barnes signed a uniform conditions of supervised probation form which required that he "obey all criminal laws."

**¶4**         In July 2023, Barnes' probation officer petitioned to revoke his probation in both cases, alleging that Barnes committed public sexual indecency under Arizona Revised Statutes ("A.R.S.") section 13-1403(A)(1).

**¶5**         In August 2023, the superior court held a contested revocation hearing for the first and second cases and a contested preliminary hearing for the § 13-1403(A)(1) violation.

**¶6**         The State called Police Chief Lance Spivey as a witness. Spivey testified that in June 2023, he responded to a 9-1-1 call from the local public swimming pool supervisor.  The supervisor reported that a man at the pool was "making inappropriate sexual-type gestures while in the swimming pool, [and] following around the swimmers."  She identified the man as the same person arrested for burglary at the local middle school and reported he was wearing a fedora.  Spivey had investigated the middle

2

school burglary, and thus knew the supervisor was describing Barnes. Spivey also knew that "Mr. Barnes has a fedora that he wears all the time."

¶7            Spivey interviewed the supervisor, the on-duty lifeguard, and other pool-goers present that day. Spivey recorded the interviews on his body-worn camera and asked the witnesses to complete witness statements. The supervisor and lifeguard told Spivey that a mother of a young girl at the pool noticed Barnes engaging in concerning behavior and notified the supervisor. The supervisor then asked the lifeguard to watch Barnes. In his witness statement, the lifeguard reported:

> While the girl was getting out and walking back toward the board, he then started rubbing his penis over his clothes with his left hand, while his right hand was making the gesture of masturbating. When he was done, he swam to the other side of the pool. I then reported what I saw to my supervisor[.]

¶8            Later that same day, Spivey saw Barnes at a Circle K. Barnes was wearing swim trunks, which Spivey believed matched the supervisor's description of the trunks Barnes was wearing at the pool. Spivey confronted Barnes with another officer, and the interaction was recorded on the other officer's body camera. Barnes admitted to being at the public swimming pool earlier that day. He denied the acts the lifeguard reported but admitted to having his hands by the waist of his swim trunks. The officers then arrested him.

¶9            Barnes' mother and girlfriend testified that they had not known Barnes to be sexually inappropriate in public. Barnes also testified. He denied the public sexual indecency allegations and stated he "put [his] thumb on the inner part of [his] waistband to adjust it." He also contended he had been a "model probationer."

¶10            After taking judicial notice of the signed uniform conditions of supervised probation forms, the superior court found by a preponderance of the evidence that Barnes had violated a condition of his probation. The court revoked his probation and sentenced him to the presumptive 1.5 years imprisonment for the first case and a concurrent term of 2.5 years imprisonment for the second case, applying a 104 days' credit.

¶11            Barnes timely appealed, and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 13-4031.

**DISCUSSION**

¶12         Barnes asserts the revocation hearing's identification procedure violated his due process rights and that insufficient evidence supported the superior court's finding that he violated a condition of probation.

¶13         A probation violation hearing "does not take on the character of a criminal prosecution when the alleged violation involves breaking a particular law." *State v. Jurado*, 157 Ariz. 215, 217 (App. 1988) (citation omitted); *see also State v. Sanchez*, 19 Ariz. App. 253, 254 (1973) ("The revocation of probation is not subject to the limitations of a formal trial." (citation omitted)). "[I]f there is reasonable cause to believe that a probationer has violated a written condition or regulation of probation," a defendant's probation officer may petition the court to revoke probation. Ariz. R. Crim. P. 27.6. At a violation hearing, the superior court's sole inquiry is whether a preponderance of the evidence supports a finding that the defendant violated the condition. *See* Ariz. R. Crim. P. 27.8(b)(3); *Jurado*, 157 Ariz. at 217.

¶14         As to Barnes' argument that he was denied fair identification procedures, he offers no legal authority supporting entitlement to certain identification procedures in a probation violation hearing. In any event, the record shows that Spivey identified Barnes as the man in the pool based on his prior investigation of and interactions with Barnes. Spivey testified that the pool supervisor identified Barnes "by a fedora and the fact that he broke into the middle school." When officers confronted Barnes at the Circle K, he admitted he had been at the pool earlier that day and that while at the pool, his hands were by his waist. And during the violation hearing, Spivey identified Barnes in the courtroom. We reject Barnes' arguments that he was not properly identified.

¶15         "The purpose of the probation violation hearing is to enable the [superior court] to determine whether there is sufficient evidence to support a factual finding that the allegations of the petition to revoke probation are true." *Jurado*, 157 Ariz. at 216–17 (citation omitted). The State must prove the violation by a preponderance of the evidence. Ariz. R. Crim. P. 27.8(b)(3); *Tatlow*, 231 Ariz. at 233, ¶ 15. During a violation hearing, [t]he court may receive any reliable evidence, including hearsay, that is not legally privileged." Ariz. R. Crim. P. 27.8(b)(3). To revoke probation, it is enough for the superior court to have "reason to believe" that the defendant violated the conditions of his probation or engaged in criminal practices. *See Tatlow*, 231 Ariz. at 233, ¶ 15 (citation omitted).

**¶16**        With few exceptions, "the revocation of probation has always been deemed to lie within the sound discretion of the [superior] court." *Sanchez*, 19 Ariz. App. at 254 (citation omitted).  We will affirm the superior court's ruling "unless [it] is arbitrary or unsupported by any theory of evidence," bearing in mind that the superior court is in the best position to determine the credibility of witnesses.  *State v. Thomas*, 196 Ariz. 312, 313, ¶ 3 (App. 1999) (citation omitted).

**¶17**        Barnes' probation conditions required him to "obey all criminal laws."  The revocation petition alleged that Barnes had breached this condition by violating § 13-1403(A)(1).  Under § 13-1403(A)(1), "[a] person commits public sexual indecency by intentionally or knowingly engaging in . . . [a]n act of sexual contact."

**¶18**        Spivey testified that the pool supervisor's 9-1-1 call was to report that Barnes was "making inappropriate sexual-type gestures while in the swimming pool, [and] following around the swimmers."  He read aloud the lifeguard's written witness statement, which Spivey said was "probably the most detailed witness statement [he's] ever had as a police officer."  The lifeguard's statement included that he saw Barnes "rubbing his penis over his clothes with his left hand, while his right hand was making the gesture of masturbating," and "[w]hen he was done, he swam to the other side of the pool."  Spivey also testified that he conducted video-recorded interviews with other pool employees and pool-goers regarding Barnes' behavior, and that they completed witness statements.  Barnes admitted to the police officers that he was at the pool that day and his hands had been by his waist.

**¶19**        It is "not the province" of this court to reexamine witnesses' credibility, and we defer to the superior court's credibility determinations. *See State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013) (citation omitted).  On this record, the superior court could properly infer that Barnes committed an act of sexual contact.  We therefore conclude that a preponderance of the evidence supports the court's finding that Barnes had violated a condition of his probation.

**CONCLUSION**

¶20        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:        AGFV